IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:09-CV-35-RJC-DCK

| | |
|---|---|
| DEQUILLA WALKER, ) | |
| ) | |
| Plaintiff, ) | ORDER |
| v. ) | |
| ) | |
| CHARLOTTE-MECKLENBURG ) | |
| SCHOOLS, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER IS BEFORE THE COURT** on the Defendant Charlotte-Mecklenburg School's ("CMS's") Motion to Dismiss (Document No. 19) filed on May 26, 2009. Plaintiff opposes the motion (Doc. No. 23), and filed a Motion for Summary Judgment (Doc. No. 25), which CMS moved to deny or continue under Fed. R. Civ. P. ("Rule") 56(f) (Doc. No. 28). Having fully considered the record, the Court will, for the reasons stated below, **grant** CMS's Motion to Dismiss and **deny** Plaintiff's Motion for Summary Judgment.

## I. BACKGROUND AND PROCEDURAL HISTORY

What follows is a brief summary of the Plaintiff's factual allegations, as recited in her Amended Complaint (Doc. No. 18): Plaintiff was hired by CMS as a substitute teacher in 2002 after she completed fingerprint recording and drug testing as a required condition to her employment. The nature of Plaintiff's employment with CMS was sporadic, and by September 2008, three months had lapsed since the last time Plaintiff had worked as a substitute teacher with CMS. CMS informed Plaintiff that under its policy, she would have to resubmit to a drug test before she could work again

1

as a substitute.

Plaintiff admits that she signed—although she denies reading—a Drug Testing Acknowledgment Form, which expressly states that failure to submit to a drug test within 24 hours would render her ineligible for employment with CMS. Plaintiff also admits that although she was aware she had to take the drug test within 24 hours, she failed to appear the following day for testing. Plaintiff explains she decided not to take the test because it was raining that day, and she wanted to avoid the inclement weather.

On October 2, 2008, Plaintiff received a letter from John Brady, the CMS Employee Relations manager, notifying her that her failure to resubmit to drug testing within the prescribed period permanently barred her from consideration for continued employment as a substitute teacher. On October 8 and 9, Plaintiff wrote two letters to CMS administrator Dr. Peter Gorman, asking him to reverse the decision barring her from employment and telling him that CMS's drug testing policy discriminated against older workers. Plaintiff then received a letter from CMS's General Counsel dated October 13, 2008, upholding its decision to permanently deny her employment.

Plaintiff first filed a charge of discrimination with the EEOC. The charge was dismissed, and Plaintiff received notice of her right to sue on November 3, 2008. (Doc. No. 18-2: Plaintiff's Ex. 1). Then, proceeding pro se, Plaintiff filed a complaint on January 30, 2009, alleging age, race, and sex discrimination. (Doc. No. 1: Complaint at 3). Thereafter Plaintiff filed an Amended Complaint on May 6, 2009, that alleges three causes of action against CMS: (1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; (2) retaliation in violation of 29 U.S.C. § 623 and N. C. Gen. Stat. § 95-241; and (3) administration of an illegal drug

testing policy that lacks statutory authority. (Doc. No. 18: Am. Complaint at ¶¶ 14-71).[1] Plaintiff seeks reinstatement as a substitute teacher, damages for retaliation, and an order from the Court declaring that CMS's drug testing policy violates the ADEA and lacks statutory authority.

On May 26, 2009, CMS moved to dismiss the case. (Doc. No. 19). After an extension, Plaintiff responded in opposition to the Motion to Dismiss on July 1 (Doc. No. 23),[2] also filing a Motion for Summary Judgment (Doc. No. 25). CMS replied to Plaintiff's response in opposition on July 16 (Doc. No. 26) and responded to Plaintiff's Motion for Summary Judgment on July 17 with a motion under Rule 56(f) to deny summary judgment or, in the alternative, to continue the motion until the close of discovery (Doc. No. 28). On July 27, Plaintiff filed an opposition to CMS's motion under Rule 56(f). (Doc. No. 31). Thus, CMS's Motion to Dismiss and Plaintiff's Motion for Summary Judgment have been fully briefed and are ripe for review.

## II. ANALYSIS

### A. Rule 12(b)(6) of the Federal Rules of Civil Procedure

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts that are "enough to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on

---

[1] Plaintiff's Amended Complaint initially claims that "[CMS]'s conduct is discriminatory with respect to [her] age, race, and sex" (Doc. No. 18: Am. Complaint at ¶ 11), but only age discrimination is plead with any supporting detail whatsoever. Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Although not onerous, the requirement of notice pleading "serves to prevent costly discovery on claims with no underlying factual or legal basis." McMahon v. Synthron, Inc., No. 1:05cv324, 2006 WL 149054, at *3 (W.D.N.C. Jan. 18, 2006). At the very least, Plaintiff must provide CMS with notice of what "conduct" she claims is discriminatory. Because she failed to do so with regard to her claims of race and sex discrimination, the Court will consider Plaintiff's age discrimination claims only.

[2] Along with her response, Plaintiff also filed a motion to again amend her complaint, (Document No. 23), which the magistrate judge denied on November 3, 2009. (Doc. No. 34).

3

its face." Robinson v. Am. Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). The Court accepts as true all well-plead factual allegations in the complaint and construes them in the light most favorable to the Plaintiff. Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id. (quoting E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)).

Because Plaintiff is proceeding pro se, the Court construes her pleadings liberally. Boag v. MacDougall, 454 U.S. 364, 365 (1982); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Nevertheless, a pleading that merely offers "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The United States Supreme Court recently emphasized that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, – U.S. – , 129 S.Ct. 1937, 1954 (2009). See also Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (pleading the words of a particular cause of action is insufficient because the words "are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage").

**B. Plaintiff's Causes of Action**

1.   *Age Discrimination*

Plaintiff's claim of age discrimination under the ADEA is based upon her perception that CMS's drug testing policy—namely, the permanent ban that results from failure to comply with the policy—constitutes "a business practice that has a disparate impact on older workers" (Doc. No. 18: Am. Complaint at ¶ 15) because "[i]t is a known fact, and well documented, that there is a great

4

statistical disparity between young workers and workers in my age group" (Id. at ¶ 73(c)).

Even assuming that a statistical disparity exists, Plaintiff fails to plead any facts that establish a connection between this disparity and CMS's drug testing policy. "[I]t is not enough to simply allege that there is a disparate impact . . . or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." Smith v. City of Jackson, Mississippi, 544 U.S. 228, 241 (2005) (emphasis in original) (internal quotations omitted). Nowhere in her complaint does Plaintiff attempt to explain exactly how a mandatory requirement to submit to drug testing within twenty-four hours of applying creates a greater burden for older applicants than younger ones. The Court will not infer from the pleaded facts this necessary causal link when such an inference would be unreasonable. Johnson, 521 F.3d at 302. At bottom, Plaintiff's Amended Complaint does little more than recite the words "disparate impact" to support her claim of age discrimination. This is insufficient to state a claim upon which relief may be granted. Iqbal, 129 S.Ct. at 1954; Bass, 324 F.3d at 765.

2. *Retaliation*

Plaintiff's second cause of action alleges that CMS retaliated against her for engaging in activity protected by both 29 U.S.C. § 623(d) and the North Carolina Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-241. Section 623(d) prohibits employers from taking retaliatory action against employees who, among other things, "oppose[ ] any practice made unlawful by [the ADEA]." REDA prohibits employer retaliation against employees who engage in protected activity by filing claims under several enumerated state statutes concerning employment

5

practices[3] or cooperating with investigations pursuant to claims filed by other employees. Plaintiff alleges that she engaged in protected activity when she wrote two letters dated October 8 and 9, 2008, to CMS administrator Dr. Peter Gorman asking him to reconsider her termination and informing him that CMS's drug testing policy placed a burden on older workers that could result in a disparate impact. (Doc. No. 18: Am. Complaint at ¶ 62). Plaintiff further alleges that retaliation occurred when Dr. Gorman conspired with CMS Employee Relations manager John Brady "to ensure that there would be no mediation and, further, that I would be forever terminated." (Id. at ¶ 63).

In order to assert a claim of retaliation under either federal or state law, Plaintiff must plead the following: "first, that she engaged in protected activity; second, that an adverse employment action was taken against her; and third, that there was a causal link between the protected activity and the adverse employment action." Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004) (Title VII case, citing Laughlin v. Metro. Washington Airports, 149 F.3d 253, 258 (4th Cir. 1998)). The Court notes initially that with respect to Plaintiff's claim of retaliation under REDA, she did not engage in protected activity because her complaint of age discrimination falls outside of the enumerated employment practices listed in N.C. Gen. Stat. § 95-241(a). See Delon v. McLaurin Parking Co., 367 F. Supp. 2d 893, 902 (M.D.N.C. 2005) (holding that an alleged retaliation must be

---

[3] See N.C. Gen. Stat. § 95-241(a)(1)(a)-(h) and (a)(5): N.C. Gen. Stat. §§ 97 (North Carolina Workers' Compensation Act); 95, Art. 2A (North Carolina Wage and Hour Act); 95, Art. 16 (North Carolina Occupational Safety and Health Act); 74, Art. 2A (North Carolina Mine Safety and Health Act); 95-28.1 (prohibiting discrimination against any person possessing the Sickle Cell or Hemoglobin C trait); 127A, Art. 16 (National Guard Re-employment Rights); 95-28.1A (prohibiting discrimination based on genetic testing); 143, Art. 52 (North Carolina Pesticide Law of 1971); 90, Art. 5F (North Carolina Drug Paraphernalia Control Act of 2009); and 50B (Domestic Violence).

"causally connected" to a complaint regarding an employment practice specifically enumerated in N.C. Gen. Stat. § 95-241). But even assuming arguendo that the first two elements were met in this case, that Plaintiff engaged in protected activity and suffered an adverse employment action, her claim fails as a matter of law because her pleaded facts cannot establish a causal link between the protected activity and adverse employment action. Here, the pleaded facts are such that the alleged retaliation—Dr. Gorman's collusion with Brady to terminate Plaintiff—occurred before the alleged protected activity: Plaintiff received notice of her termination from Brady on October 2, 2008, but did not contact Dr. Gorman until October 8. No causal link can exist when the alleged retaliation occurs before the alleged protected activity. Swerdloff v. Green Spring Health Servs., Inc., 139 F.3d 892, 1998 WL 165783, at *4 (4th Cir. Apr. 2, 1998) (unpublished).

Furthermore, even if the Court were to look beyond the facts as pleaded in paragraphs 62 and 63 of Plaintiff's Amended Complaint and construe Plaintiff's allegation of adverse employment action to include CMS's decision on October 13, 2008, to uphold her termination, her claim would still fail for lack of an adverse employment action. Although this decision occurred after Plaintiff's conversation with Dr. Gorman, adverse employment actions are generally limited to "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (Title VII case). Outside the scope of adverse employment actions are "mediate decisions having no immediate effect upon employment conditions. . . that are simply steps in a process for making such obvious end-decisions as those to hire, to promote, etc." Id. (emphasis added).

Plaintiff does not plead facts establishing that CMS made the decision to uphold her termination pursuant to some kind of formal review process such that it constituted a distinct adverse

employment action. Although Plaintiff claims that she had an opportunity to mediate or appeal her termination, this conclusion is supported only by two post-termination conversations with CMS staff members, during which Plaintiff was asked why she failed to notify CMS that she could not attend her drug testing appointment and whether she had contacted CMS's Employee Relations department. (Doc. No. 18: Am. Complaint at ¶¶ 38 and 42). Neither of these statements suggest that the decision to bar Plaintiff from employment was subject to reconsideration. Upon these facts, Plaintiff's conclusion that she had a right to appeal or mediate her termination is plainly unreasonable and need not be accepted by the Court. Johnson, 521 F.3d at 302. In the absence of such a right, Plaintiff cannot establish that the decision to uphold her termination was an adverse employment action, a necessary element to any claim of retaliation under federal or state law. See Colter v. Dobski & Assocs., Inc., 35 F. Supp. 2d 824, 831 (D. Kan. 1999) ("[T]he failure to reconsider [what otherwise may be an adverse employment action] is not an adverse employment action. Plaintiff has not shown that defendant generally gives its employees an opportunity to request reconsideration, or that defendant has any obligation to reconsider."). Thus, Plaintiff has failed to state a claim upon which relief may be granted.

3. *Legality of CMS's Drug Testing Policy*

Finally, Plaintiff contends that CMS wrongfully denied her employment for non-compliance with its drug testing policy because the entire policy itself is illegal for want of statutory authority. (Doc. No. 18: Am. Complaint at ¶ 71).[4] In support, Plaintiff claims that the policy must derive its authority from N.C. Gen. Stat. § 115C-332, which concerns criminal background checks, and that

---

[4] In her response to CMS's Motion to Dismiss, Plaintiff raises for the first time a constitutional challenge to CMS's drug testing policy. (Doc. No. 23 at 4). This claim is not included in Plaintiff's Amended Complaint; thus, the Court will not consider it here.

§ 115C-332 fails to provide authority because drug testing is not used to check the criminal history of applicants. (Id. at ¶¶ 67 and 69).

On these contentions, Plaintiff is simply wrong. First, drug testing by North Carolina employers is governed by N.C. Gen. Stat. § 95-230 et seq., not § 115C-332. Second, these provisions seek to regulate, not authorize, employer drug testing. See, e.g., N.C. Gen. Stat. §§ 95-232 (prescribing procedural requirements for drug testing) and 95-234 (establishing civil penalties for non-compliance by employers). Inasmuch as Plaintiff fails to allege that CMS's drug testing policy violates a procedural requirement of § 95-234, her claim that the policy is illegal has no legal basis.

### III. CONCLUSION

The Court has examined each of Plaintiff's claims and finds that none state a claim upon which relief may be granted.

**IT IS, THEREFORE, ORDERED** that:

1. The Defendant's Motion to Dismiss (Doc. No. 19) is **GRANTED**;

2. The Plaintiff's Amended Complaint (Doc. No. 18) is **DISMISSED**; and

3. The Plaintiff's Motion for Summary Judgment (Doc. No. 25) is **DENIED** as moot.

Signed: November 9, 2009

Robert J. Conrad, Jr.
Chief United States District Judge